## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES P. HOLTON,

        Plaintiff,

v.                                                                    Case No. 11-14198

BANK OF AMERICA, NA,

        Defendant.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S MOTION TO DISMISS

Before the court is Defendant's motion to dismiss Plaintiff's complaint for failure

to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The motion has been

fully briefed, and the court determines that a motion hearing is not necessary.  *See* E.D.

Mich. LR 7.1(f)(2).  For the reasons described below, the court will grant in part and

deny in part Defendant's motion.

### I.  BACKGROUND

In July or August of 2003, Plaintiff entered into a mortgage with Countrywide

Mortgage, (Compl. ¶ 9, Dkt. # 1-2), for which Defendant is a "successor corporation,"

(*id.* ¶ 5).  The mortgage secured a $98,000 loan to Plaintiff and stated that he "has

promised to pay this debt in regular Periodic Payments and to pay the debt in full not

later than August 1, 2010."  (Mortgage 2, Compl. Ex. 1, Dkt. # 1-3, at 4-24.)  Appended

to the mortgage was a balloon rider that extended Plaintiff a conditional refinance option

that would extend the loan's maturity date to 2033.  (Balloon Rider 1, Compl. Ex. 1, Dkt.

# 1-3, at 21-23.)  The option was contingent on Plaintiff's fulfillment of several

conditions, one of which required that Plaintiff send "a written request" to Defendant asking to refinance.  (*Id.* at 2.)  The balloon rider further stated that Defendant would notify Plaintiff of his opportunity to refinance at least sixty days prior to the loan's maturity date and inform him of the name, title, and address of the person he had to contact to exercise the option.  (*Id.*)

For seven years Plaintiff paid his mortgage with no missed or late payments. (Compl. ¶¶ 11-13.)  In April 2010, Plaintiff received notice from Defendant that he would soon be facing a balloon payment if he did not shortly exercise the conditional refinance option.  (*Id.* ¶ 14.)  In response, Plaintiff contacted Defendant and indicated that he wanted to enter into the thirty-year fixed-rate mortgage allowed by the option.  (*Id.* ¶ 15.) Defendant told Plaintiff that it would send him the necessary paperwork, but it never did. (*Id.* ¶¶ 15-16.)  Plaintiff heard nothing further from Defendant until July 2010, when Defendant sent another letter inquiring into Plaintiff's interest in refinancing.  (*Id.* ¶ 17.) Plaintiff again told Defendant he would like to refinance, but Defendant again failed to send the necessary paperwork.  (*Id.* ¶¶ 17-18.)

The August 1, 2010 maturity date came and went without a balloon payment from Plaintiff, but Defendant continued to withdraw Plaintiff's monthly mortgage payment until January or February of 2011.  (*Id.* ¶¶ 19-20.)  When Defendant stopped collecting those payments, Plaintiff contacted Defendant and was informed that he owed a balloon payment of $86,000 and Defendant would no longer accept monthly payments.  (*Id.* ¶ 22.)  On April 20, 2011, Plaintiff received a "Notice of Intent to Foreclose" for non-payment of his mortgage.  (*Id.* ¶ 28.)  Plaintiff continued his efforts to refinance, but to no avail.  (*Id.* ¶ 24, 27, 30-33.)  Defendant did, however, reverse its

2

earlier stance on refusing Plaintiff's regular mortgage payments, and it collected five months' worth on August 3, 2011.  (*Id.* ¶ 29.)

On August 22, 2011, Plaintiff initiated this lawsuit in the Genesee County Circuit Court, alleging three substantive claims under Michigan law: (1) breach of written contract; (2) breach of implied contract; and (3) negligence.  Defendant removed the action to this court on September 23, 2011.  Although the court dismissed the case without prejudice on September 30, 2011, to give the parties an opportunity to explore a potential settlement, these efforts were ultimately unsuccessful.  The case was reopened on March 16, 2012, and shortly thereafter Defendant filed this motion seeking dismissal under Rule 12(b).

## II.  STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), otherwise it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for "fail[ing] to state a claim upon which relief can be granted," *id.* 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must allege enough facts that, when assumed true, "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), by "stat[ing] a claim to relief that is plausible on its face," *id.* at 570.  A claim is facially plausible when the plaintiff pleads facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than showing only "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

3

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). While a complaint need not state "detailed factual allegations," *Twombly*, 550 U.S. at 555, it must contain more than "labels and conclusions," *id.*, "a formulaic recitation of the elements of a cause of action," *id.*, or "naked assertion[s]" unsupported by "further factual enhancement," *id.* at 557. In other words, although "a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.

A court takes a "two-pronged approach" when considering a Rule 12(b)(6) motion. *Id.* at 1950. First, the court must dismiss "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, if a complaint does present "well-pleaded factual allegations," a court will "assume their veracity" and decide "whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

In his complaint, Plaintiff avers that: Defendant breached the mortgage contract by refusing his mortgage payments; Defendant breached an implied contract to refinance the mortgage; and Defendant's failure to follow through with the conditional refinance option and refusal of his mortgage payments constituted actionable negligence. Defendant argues that the facts pleaded in support of these claims do not

4

give rise to an entitlement to relief.  The court largely agrees and will dismiss all of Plaintiff's claims, save for the allegation that Defendant breached its contractual obligations under the balloon rider.

### A.  Breach of the Written Contract

Plaintiff first claims that Defendant breached the mortgage agreement when it "wrongfully refused to take [his mortgage] payments and reported Plaintiff as delinquent in his payments to the credit reporting agencies." (Compl. ¶¶ 36-37.)  To succeed in a breach of contract claim, Plaintiff must prove by a preponderance of the evidence "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, --- N.W.2d ----, 296 Mich. App. 56, 2012 WL 967840, at *7 (Mar. 22, 2012) (per curiam).

Plaintiff fails to plead facts sufficient to establish that Defendant was in violation of the parties' contract when it stopped taking Plaintiff's mortgage payments and reported him delinquent.  The terms of the mortgage are straightforward: "Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full no later than August 1, 2010."  (Mortgage 2.)  Plaintiff concedes that he did not abide by these terms, and nothing in the complaint indicates that Defendant's enforcement of this provision constitutes a breach of the written contract.  Rather, Plaintiff avers that he "was informed at the time of closing that the mortgage was a 30 year fixed rate mortgage."  (Compl. ¶ 10.)  To the extent that Plaintiff proffers this alleged statement as extrinsic evidence of the meaning of the mortgage agreement, the court cannot use it as a basis for altering the unambiguous terms of the written contract.  *See In re Smith*

5

*Trust*, 745 N.W.2d 754, 758 (Mich. 2008); *Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004).  And, as discussed below, Michigan law also forecloses any argument that Countrywide or Defendant orally modified the written terms of the mortgage.  *See infra* Section III.B.  Thus, Plaintiff has not stated a claim for breach of the mortgage contract based upon Defendant's refusal of his mortgage payments after the August 1, 2010 maturity date.

Nevertheless, Plaintiff's allegations are sufficient to state a claim for a breach of the conditional refinance option contained in the balloon rider.  Defendant asserts that Plaintiff cannot demonstrate he successfully exercised the option because, while he alleges he met some of the conditions required for the refinancing, he does not aver he made a "written request to the note holder" in accordance with the terms of the balloon rider.  (Balloon Rider 2.)  According to Plaintiff, however, he attempted to take advantage of the option twice but was prevented both times by Defendant's failure to send the necessary paperwork.  (Compl. ¶¶ 14-18.)  Under the balloon rider, Defendant was obligated to provide Plaintiff with payment record information and the name, title, and address of the person Plaintiff must notify to exercise the option.  (Balloon Rider 2.) Failing to do so constitutes a breach that would prevent Plaintiff from satisfying the conditions he needed to meet in order to exercise the option.  In pleading that Defendant failed to provide that paperwork despite Plaintiff's multiple requests, Plaintiff has met his burden of pleading facts sufficient to establish that Defendant breached the written terms of the option.

## B.  Breach of an Implied Contract

In addition to alleging that Defendant breached the terms of the option contract, Plaintiff claims that his communications with Defendant concerning his ability to refinance, coupled with Defendant's acceptance of his mortgage payments in the months following the August 1, 2010 maturity date, gave rise to a "modified mortgage" that Defendant breached by later claiming he had defaulted.  (Compl. ¶¶ 38-39; Pl.'s Resp. to Def.'s Mot. Dismiss 7-8, Dkt. # 11.)  Michigan's statute of frauds speaks to the enforceability of a financial institution's promise to modify a loan:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution . . . .
>
> > (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).  Michigan courts have interpreted section 566.132 as an "unqualified and broad ban" barring any action to enforce a contract made with a financial institution unless it is in writing and signed.  *Crown Tech. Park v. D&N Bank*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000).

Plaintiff makes no claim that the "modified mortgage" he entered into with Defendant was reduced to writing and signed.  At most, Plaintiff's claim rests on an oral promise.  Assuming it does, his claim fails to satisfy the statute of frauds.  *See Smith v. Bank of Am. Corp.*, No. 10-14161, 2011 WL 653642, at *3 n.3 (E.D. Mich. Feb. 14, 2011; *Bingham v. Bank of Am., N.A.*, No. 10-11917, 2010 WL 3633925, at *2-3 (E.D.

7

Mich. Sept. 14, 2010). Plaintiff has not pled facts sufficient to establish that it had an enforceable, modified mortgage agreement with Defendant.

### C. Negligence

Plaintiff's third claim is that Defendant was negligent in refusing to modify his mortgage, as Defendant "knew or should have known" that "failing to follow through with" the conditional refinance option would cause Plaintiff to be "eliminated from future offers," negatively affect his credit rating, and lead to the foreclosure of his home. (Compl. ¶¶ 41-43.) "To establish a prima facie case of negligence, a plaintiff must show (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused the plaintiff injuries, and (4) that the plaintiff suffered damages." *Lelito v. Monroe*, 729 N.W.2d 564, 566 (Mich. Ct. App. 2006).

As Defendant points out in its motion, Plaintiff's complaint offers no explanation of what duty Defendant owes Plaintiff that would give rise to a negligence claim. In his motion response, Plaintiff states that "[t]he basis of the . . . negligence claim is in the written note." (Pl.'s Resp. to Def.'s Mot. to Dismiss 8.) In other words, Plaintiff's claim is premised on the duties Defendant owed Plaintiff under the parties' contract, and his remedy therefore lies in contract, not in tort. *See Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 912 (Mich. Ct. App. 1991) ("It has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not.") Since Plaintiff's negligence claim is subsumed by his breach of written contract claim, it is dismissed.

8

### D.  Unclean Hands

Lastly, Defendant contends that the doctrine of unclean hands forecloses Plaintiff from receiving the equitable relief he requests, namely, rescinding the mortgage and quieting title to the property in his favor.  "'[The clean hands maxim] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'"  *Stachnik v. Winkel*, 230 N.W.2d 529, 532 (Mich. 1975) (alteration in original) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1944)).  In other words, "[a] person seeking equity should be barred from receiving equitable relief if there is any indication of overreaching or unfairness on this person's part."  *Royce v. Duthler*, 531 N.W.2d 817, 820 (Mich. Ct. App. 1995).

Plaintiff's allegations, if true, do not evince bad faith that would merit dismissal of his complaint due to his unclean hands.  In fact, Plaintiff avers that he consistently and diligently tried to exercise his contractual right to refinance the mortgage and continue paying off his debt to Defendant.  Of course, whether rescission of the mortgage or a judgment that Plaintiff owns the property would be an appropriate remedy for Defendant's breach of the conditional refinance option is a different question that is not currently before the court.  At this point, it is enough to say that Plaintiff's behavior in regard to the mortgage agreement, as alleged in the complaint, does not suggest overreaching or unfairness that would bar him from seeking equitable relief.

9

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Defendants' motion to dismiss [Dkt. # 9] is

GRANTED in part and DENIED in part.  It is DENIED with respect to Plaintiff's claim

that Defendant breached the written option agreement contained in the balloon rider to

his mortgage contract.  It is GRANTED in all other respects.


 s/Robert H. Cleland                                      
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 22, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 22, 2012, by electronic and/or ordinary mail.

 s/Lisa G. Wagner                                      
Case Manager and Deputy Clerk
(313) 234-5522